UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF GEORGIA *ex rel*. BROOK GONITE,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED HEALTHCARE OF GEORGIA, INC., UNITEDHEALTH GROUP, INC., UNITED HEALTHCARE SERVICES, INC., UNITEDHEALTHCARE, INC., OPTUM, INC., and OPTUM SERVICES, INC.,<br><br>    Defendants. | Case No. 5:19-CV-246-MTT |

**UNITED STATES' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS RELATOR'S AMENDED COMPLAINT BASED ON THE ALLEGED UNCONSTITUTIONALITY OF THE *QUI TAM* PROVISIONS OF THE FALSE CLAIMS ACT**

In accordance with its Notice of Intervention under 28 U.S.C. § 2403(a) for the purpose of defending the constitutionality of the *qui tam* provisions of the False Claims Act filed contemporaneously herewith, the United States submits this Opposition to Defendants' Motion to Dismiss Relator's Amended Complaint, ECF No. 69, based on the alleged unconstitutionality of the *qui tam* provisions of the False Claims Act. *See* Defendants' Memorandum of Law in Support of Motion to Dismiss, ECF No. 69-1 at 8–12.

The False Claims Act—a statute that has been the United States' primary fraud-fighting tool for 160 years—does not violate the United States Constitution. As every federal circuit to consider these arguments has done, this Court should find that the statute is consistent with the Constitution and deny Defendants' Motion to Dismiss based on the alleged unconstitutionality of the *qui tam* provisions of the FCA.

**INTRODUCTION**

Congress has carefully crafted the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733, to create a public-private partnership for the common good to discover and redress fraud against the government, while leaving the government in ultimate control. While federal spending has recently exceeded $7 trillion per year,[1] even the most conservative estimate of the amount lost to fraud produces staggering numbers. It is as necessary now as it was in 1863 when President Lincoln signed the FCA into law to incentivize the public to report fraud. The FCA creates that incentive through its *qui tam* provisions. Courts of appeal have unanimously found the government's control over *qui tam* cases to pass constitutional muster. This Court should follow these precedents and do the same.[2]

**ARGUMENT**

Defendants argue that Relator's prosecution of this declined *qui tam* case represents an impermissible delegation of Executive power to a private party in violation of the Appointments and Take Care Clauses under Article II of the U.S. Constitution. *See* ECF 69-1 at 8–12. But courts consistently have rejected such arguments and upheld the constitutionality of the FCA's *qui tam* provisions. *See United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787 (10th Cir. 2002); *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749 (5th Cir. 2001) (en banc); *United States ex rel. Taxpayers Against Fraud v. General Elec. Co.*, 41 F.3d 1032 (6th Cir. 1994); *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743 (9th Cir. 1993); *United States ex rel. Butler v. Shikara*, No. 20-

---

[1] U.S. Dep't of Treasury, Financial Report of the United States: Fiscal Year 2023 (Feb. 15, 2024), https://www.fiscal.treasury.gov/files/reports-statements/financial-report/2023/02-15-2024-FR-(Final).pdf.

[2] This Memorandum of Law addresses only the Defendants' constitutional challenges. The United States has filed a separate Statement of Interest addressing other arguments in Defendants' motion to dismiss.

80483-CV, 2024 WL 4354807, at *10–13 (S.D. Fla. Sept. 6, 2024) (rejecting constitutionality argument made by an affiliate of Defendants—UnitedHealthcare of Florida, Inc.—represented by the same counsel); *United States ex rel. CLJ, LLC v. Halickman*, No. 20-CV-80645, 2024 WL 3332055, at *21 n.5 (S.D. Fla. June 14, 2024); *United States ex rel. Wallace v. Exactech, Inc.*, No. 7:18-cv-01010-LSC, 2023 WL 8027309, at *1363–66 (N.D. Ala. Nov. 20, 2023); *see also Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1312–14 (11th Cir. 2021) (relying on circuit court opinions holding that the FCA *qui tam* provisions do not violate Article II in finding that the United States maintains sufficient control over *qui tam* actions); *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1154–55 (2d Cir. 1993) (holding that *qui tam* actions do not violate separation of powers under Article III of the Constitution). This Court should hold likewise.

At its core, the separation of powers doctrine focuses on "the allocation of official power among the three coequal branches of our Government." *See Clinton v. Jones*, 520 U.S. 681, 699 (1997). "[I]n determining whether [legislation] disrupts the proper balance between the coordinate branches, the proper inquiry focuses on the extent to which it prevents the Executive Branch from accomplishing its constitutionally assigned functions." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 443 (1977). Courts repeatedly have held that *qui tam* actions do not upset such a balance.

When Congress enacted the FCA in 1863, it included *qui tam* provisions, following a "long tradition of [such] actions in England and the American Colonies." *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 774 (2000). These provisions allow private individuals, known as relators, to bring suit "for the person and for the United States Government" against "[a]ny person" who defrauds the government. *Id.* at 769 (quoting 31 U.S.C. §§ 3729(a), 3730(b)(1)). If the suit is successful, the relator is entitled to a share of the recovery. *Id.* at 769–70. The FCA has become "the government's 'primary litigative tool for combatting fraud,'" with

3

the FCA's *qui tam* provisions serving "as a critical supplement to government enforcement." *United States ex rel. Doe v. Staples, Inc.*, 773 F.3d 83, 84 (D.C. Cir. 2014) (quoting S. Rep. No. 99-345 at 2, 4 (1986)).

*Qui tam* relators are private litigants. The Supreme Court has expressly declined to adopt a theory that they sue as "agent[s] of the United States." *Stevens*, 529 U.S. at 772. Instead, relators maintain a "concrete private interest in the outcome of the suit" that arises from Congress' "partial assignment of the Government's damages claim" to them. *Id.* at 772–73 (alteration accepted). While relators bring *qui tam* actions "in the name of the Government," 31 U.S.C. § 3730(b)(1), this is recognized as a procedural practice that does not alter their status as private litigants with private interests. *See Stevens*, 529 U.S. at 780 n.9, 786 n.17 (actions pursued by relators are "private suit[s]" brought by "private parties."). Relators are not transformed into "official[s] of the United States" merely because, in pursuit of their own interests, they further a federal interest in remedying and deterring fraud on the United States. *See Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 587 U.S. 262, 272 (2019) ("[Section] 3731(b)(2)'s use of the definite article 'the' suggests that Congress did not intend for any and all private relators to be considered 'the official of the United States.'").

The deep historical roots of *qui tam* provisions confirm that the FCA does not violate the Constitution. "Statutes providing for actions by a common informer, who himself had no interest whatever in the controversy other than that given by statute, have been in existence for hundreds of years in England, and in this country ever since the foundation of our government." *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 541 n.4 (1943). In *Stevens*, the Supreme Court reviewed this "long tradition of *qui tam* actions in England and the American Colonies," as well as the "considerable number" of statutes with *qui tam* provisions passed by the First Congress. *See*

*Stevens*, 529 U.S. at 774–77. The Court found this evidence "well nigh conclusive" in establishing that *qui tam* relators have Article III standing. *Id.* at 777.

The historical evidence is also relevant to the constitutional question presented here. *See Riley*, 252 F.3d at 752 (finding it "logically inescapable that the same history that was conclusive on the Article III question in *Stevens* with respect to *qui tam* lawsuits initiated under the FCA is similarly conclusive with respect to the Article II question concerning this statute"). The First Congress enacted numerous *qui tam* provisions, thus making clear that the Framers did not believe relators were performing functions that only federal officers could properly perform. *See Bowsher v. Synar*, 478 U.S. 714, 723–24 (1986) (acts of the First Congress "provide[] contemporaneous and weighty evidence of the Constitution's meaning since many of the Members of the First Congress had taken part in framing that instrument") (quotation marks omitted). And the long tradition of *qui tam* actions in the United States after the Framing provides "additional evidence that the doctrine of separated powers does not prohibit" this unique practice, given that "'traditional ways of conducting government . . . give meaning' to the Constitution." *Mistretta v. United States*, 488 U.S. 361, 401 (1989) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 610 (1952) (Frankfurter, J., concurring)); *see also NLRB v. Noel Canning*, 573 U.S. 513, 524–25 (2014); *Butler*, 2024 WL 4354807, at *11 (finding that "decades—nay, centuries—of litigation through the use of the *qui tam* device under the FCA undercuts [defendant's] argument" against the constitutionality of FCA's *qui tam* provisions).

Courts rejecting constitutional challenges to the FCA have also observed that the United States retains significant control over *qui tam* suits. *See Yates*, 21 F.4th at 1312; *Riley*, 252 F.3d at 753–57; *Taxpayers Against Fraud*, 41 F.3d at 1041; *Kelly*, 9 F.3d at 753–55; *Kreindler & Kreindler*, 985 F.2d at 1155. The Supreme Court underscored this point recently. *See United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 425–26, 434–35 (2023). If the

government intervenes in a *qui tam* suit, "the relator loses control" and the action is "conducted by the Government." *Id.* at 425 (quoting 31 U.S.C. § 3730(b)(4)(A)). And even where the government initially declines to intervene, the Supreme Court confirmed in *Polansky* that it may intervene at a later time and move to dismiss the relator's claims. *Id.* at 432–33, 438. Such motions are subject to highly deferential review under Federal Rule of Civil Procedure 41(a); indeed, the Supreme Court emphasized that district courts must grant dismissal "in all but the most exceptional cases"—"even if the relator presents a credible assessment to the contrary." *Id.* at 437–38.

Beyond the government's broad dismissal authority, the FCA also provides the Executive with an array of tools for protecting the government's interests in cases where it does not intervene. The government can "elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty." 31 U.S.C. § 3730(c)(5). It can settle a *qui tam* action over the relator's objection. *See id.* § 3730(c)(2)(B). If it instead permits the *qui tam* action to proceed, the government is entitled to, among other things: (1) receive copies of all pleadings and deposition transcripts; (2) move to stay any discovery by the relator that "would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts"; and (3) prevent the relator from dismissing or settling a case without the government's approval. *Id.* §§ 3730(b)(1), (c)(3), (c)(4). And because the first-to-file bar and the public disclosure bar do not apply to the government, the government can bring its own action even after a relator's suit is dismissed, subject to principles of claim preclusion. *See id.* §§ 3730(b)(5), (e)(4). In holding that the FCA's *qui tam* provisions do not violate the Constitution, courts have noted all these mechanisms of "executive control." *See Kelly*, 9 F.3d at 752–55; *see also, e.g.*, *Yates*, 21 F.4th at 1312; *Riley*, 252 F.3d at 753; *Taxpayers Against Fraud*, 41 F.3d at 1041.

6

The recent decision of a single district court in *United States ex rel. Zafirov v. Fla. Med. Assocs., LLC*, No. 8:19-CV-01236-KKM-SPF, 2024 WL 4349242 (M.D. Fla. Sept. 30, 2024), provides no sound basis to depart from the longstanding consensus among the courts of appeals. The district court based its analysis on the premise that, when relators bring FCA suits, they are suing on behalf of the United States in the exercise of "core executive power." *Id.* at *8. But as described above, *qui tam* suits are private claims, pursuing the relator's interest in a share of the recovery as partially assigned by the government. The *Zafirov* court further erred in concluding that relators occupy an "office" akin to that of the Attorney General, which may vary from occupant to occupant. *Id.* at *11. Whereas only one person holds the office of Attorney General at any given time, there are many relators, and a statute empowering an indeterminate number of private citizens to exercise certain powers does not create an "office." This error of the district court is further underscored by the fact that when a relator dies, his estate may be substituted in his place, *id.* at *14, which is obviously not true for an "office" in the United States government. Finally, even while acknowledging that "early Congresses enacted at least some statutes containing an enforcement mechanism roughly analogous to the FCA," *id.* at *17, the court improperly discounted the weight of this Founding-era evidence and also failed to square it with the Supreme Court's reliance on those early statutes in *Stevens*.

## **CONCLUSION**

As set forth above, the FCA's *qui tam* provisions are consistent with the Constitution. The Court should reject Defendants' arguments—as every federal Circuit Court to address these issues has done—and deny Defendants' motion based alleged unconstitutionality of the *qui tam* provisions of the FCA.

Respectfully submitted this 26th day of November 2024.

                        BRIAN M. BOYNTON
                        Principal Deputy Assistant Attorney General

                        C. SHANELLE BOOKER
                        Attorney for the United States
                        Acting Under Authority Conferred by
                        28 U.S.C. § 515

By:    *s/ Todd P. Swanson*
         TODD P. SWANSON
         Georgia Bar No. 496989
         Assistant United States Attorney
         United States Attorney's Office
         P. O. Box 1702
         Macon, GA 31702
         Telephone: (478) 621-2728
         Todd.Swanson@usdoj.gov

         JAMIE ANN YAVELBERG
         ROBERT MCAULIFFE
         CAROL LYNN WALLACK
         District of Columbia Bar No. 399292
         RACHEL C. KARPOFF
         New York Bar No. 5604467
         United States Department of Justice
         Civil Division
         Commercial Litigation Branch
         Frauds Section

         *Counsel for the United States of America*